**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| KENNETH G. SPARKS, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-CV-00123 RHH |
| | ) | |
| THE STATE OF MISSOURI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court upon review of the Amended Complaint of self-represented Plaintiff Kenneth Sparks, III. [ECF No. 8]. The Court previously granted Plaintiff leave to proceed in forma pauperis and reviewed his initial Complaint pursuant to 28 U.S.C. § 1915. [ECF No. 7]. Based on that review, the Court directed Plaintiff to file an Amended Complaint on a Court-provided form and in compliance with the Court's instructions. *Id*. The Court warned Plaintiff that his Amended Complaint would also be reviewed under § 1915. *Id.* For the reasons discussed below, the Court will sever and dismiss Plaintiff's infringement of his religious rights claims pursuant to Federal Rule of Civil Procedure 21. Plaintiff may file these claims in a new lawsuit if he chooses to do so. Additionally, the Court dismisses the Amended Complaint, without prejudice, pursuant to 28 U.S.C. § 1915(e)(2).

**Legal Standard on Initial Review**

This Court is required to review a Complaint filed in forma pauperis and must dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490

U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible when the Plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). Although a Plaintiff need not allege facts in painstaking detail, the facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678. Determining whether a Complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The Court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

District courts must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," courts should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even pro se complaints must allege facts that, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). District courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, or interpret procedural rules in a manner that excuses the mistakes of those who proceed without counsel. *See McNeil v. United States,* 508 U.S. 106, 113 (1993).

**Background and Amended Complaint**

Plaintiff Kennth Sparks, III, filed the instant action on July 21, 2025, pursuant to 42 U.S.C. § 1983 against 12 defendants for purported civil rights violations that occurred while he was a pretrial detainee at the Ste. Genevieve County Jail in early 2025.[1] Due to insufficiencies with Plaintiff's original Complaint, on November 19, 2025, the Court ordered Plaintiff to file an amended pleading on a Court-provided form. [ECF No. 7]. Plaintiff was given specific instructions on how to amend his pleading. *See id*. Plaintiff filed an Amended Complaint on December 4, 2025, *see* ECF No. 8, and the Court treats the Amended Complaint as the operative pleading.

Plaintiff names the following individuals and entities as Defendants in this action: (1) Ste. Genevieve County; (2) Ste. Genevieve County Jail; (3) Ste. Genevieve County Jail Medical Staff; (4) Major Unknown Schott; (5) Sergeant Unknown Goggins; (6) Sergeant Unknown Thomure; (7) Sergeant Unknown Tubbs; (8) Correctional Officer Unknown Ryan; (9) Correctional Officer Unknown Prest; (10) Sergeant Unknown Schmitt; and (11) Pamela Buchanan. Plaintiff sues the individual Defendants in both their individual and official capacities.

The claims against Defendants include allegations of deliberate indifferent to his serious medical needs, an alleged delay in medical treatment, a failure of Defendant Schott to properly train employees at the Jail with respect to responding to medical requests, a failure of employees of the Jail to respond to grievances and medical service requests, a policy and practice at the Jail of failing to properly respond to medical requests and grievances, the denial of Plaintiff's First Amendment rights with respect to his requests for a kosher meal plan, and the denial of Plaintiff's First Amendment right of access to courts.

[1] Plaintiff was moved from Ste. Genevieve County Jail to Pulaski County Jail in Ulin, Illinois, on May 18, 2026. [ECF No. 10].

Plaintiff asserts that on the days leading up to February 21, 2025, he was verbally threatened by another federal pretrial detainee at Ste. Genevieve County Jail, Antonio Braxton. [ECF No. 8 at 12]. Along with the verbal threats, Braxton taunted Plaintiff by pouring water into Plaintiff's bed and stealing Plaintiff's commissary items. *Id*. On February 22, 2025, Plaintiff reported the conduct to Defendant Ryan, who told Plaintiff he would investigate the matter. *Id*.

That same day, on February 22, 2025, Plaintiff states that he was physically attacked by inmate Braxton. *Id*. He asserts that he received injuries to his head, neck, back, leg and hands. *Id*. Plaintiff has not given specifics as to what these injuries entailed.[2] He states that after the attack, he was placed on lockdown, pursuant to Jail policy, for being in an altercation. *Id*. Plaintiff does not allege if he asked for medical assistance immediately after the attack or if he was seen by a medical professional at this time.

On February 27, 2025, five days after the altercation, Plaintiff filed a grievance alleging a generalized lack of medical attention after the attack. *Id*. at 12-13. Defendant Schmitt replied to Plaintiff's grievance, "You are on lockdown due to fighting. Put in a med-request to see the doctor or nurse." *Id*. Plaintiff does not indicate if he filed a "med-request" at this time.

Five days later, on March 5, 2025, Plaintiff filed a grievance for head, leg, and back pain. *Id*. It is notable that despite having previously been told to file a medical request instead of a

---

[2] On page 18 of his Amended Complaint, Plaintiff states that he suffered injuries to the right leg and knee, as well as a partially dislocated hip joint. [ECF No. 8 at 18]. He does not indicate why he believes he suffered a partially located hip joint or if he was diagnosed with this injury by a medical professional. And this is the only portion of his Amended Complaint where he discusses a specific injury. However, at no time in the Amended Complaint does Plaintiff state that he sought treatment for a dislocated hip and one of the named Defendants denied him treatment. "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts,* 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent,* 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights). Plaintiff's failure to identify a specific serious medical need, (that was objectively identifiable as necessitating a doctor's treatment), which he sought treatment from a specific individual for but was denied, is fatal to his claim for deliberate indifference under the Fourteenth Amendment.

grievance, Plaintiff filed a grievance. Defendant Thomure answered Plaintiff's grievance and marked it as resolved, stating, "You need to put in a MSR or talk to medical." *Id*. at 13.

The next day, Plaintiff filed a medical service request (MSR) explaining that he was having head, leg and back pain and requesting medical attention. He asserts that an entity identified as "Medical 8700" marked the request as resolved and stated, "will see on sick call/8585." *Id.* Plaintiff does not indicate if he was seen on "sick call" after he filed the MSR.

Twelve days later, on March 17, 2025, Plaintiff filed a grievance asserting that "medical" was neglecting his request for medical attention. *Id*. He asserts that the grievance was marked resolved without an appeal, and Defendant Thomure forwarded it to Defendant Goggins. Goggins stated, "This needs to be on a medical request form." This was at least the third time Plaintiff filed a medical request on a grievance form instead of filing a MSR.

On March 20, 2025, Plaintiff filed an MSR requesting X-rays for his back. He also complained about headaches due to the altercation with Braxton on February 22, 2025. *Id.* Plaintiff states that "Medical 8700" marked his MSR as resolved and stated, "Will see you on sick call/8585." *Id.* Plaintiff does not indicate when "sick call" hours were, if he went to "sick call" or if he was seen by the doctor.

On March 25, 2025, Plaintiff filed an MSR requesting an X-Ray evaluation and diagnosis from the doctor. "Medical 8700" marked the MSR as resolved, stating, "Dr. Buchannan will provide diagnosis." *Id*.

On March 28, 2025, Plaintiff filed an MSR seeking pain medicine stating that Tylenol was not helping his head, leg and back pain. "Medical 8700" marked his MSR response as resolved, stating, "Will see you on sick call." It is clear from Plaintiff's request that Plaintiff had previously been seen by a medical practitioner prior to this date as he was receiving Tylenol for his injuries.

However, Plaintiff does not indicate if he pursued his request for additional pain medicine through "sick call" hours or if he followed up on his request from March 25, 2025, to see a physician.

On April 3, 2025, Plaintiff filed an MSR seeking additional pain relief. "Medical 8700" marked his MSR response as "resolved" without an appeal, stating, "Will see you at sick call." *Id*. at 14. Once again, Plaintiff fails to indicate in his Amended Complaint whether he attended "sick call" to seek additional pain medication. If Plaintiff did attend "sick call," he does not indicate what he specific medical condition he was seeking pain medication for, who he asked for the medication, whether it was granted or denied, and when this allegedly occurred.

On April 10, 2025, Plaintiff filed an MSR requesting an extra blanket because of his joint disease being amplified due to cold in the Jail. Plaintiff fails to expand as to what exactly his "join disease" entailed and why he believes he needed an extra blanket to allegedly treat this disease. Plaintiff also fails to indicate who he asked for the blanket. In his MSR, Plaintiff also requested a bottom bunk, but he does not state why he sought a bottom bunk. "Medical 8700" marked Plaintiff's request as resolved without an appeal. On the MSR response, it stated, "Does not meet qualifications for extra blanket." Plaintiff states that his bottom bunk request was ignored. *Id*.

On April 21, 2025, Plaintiff filed a grievance, allegedly arguing that his medical needs were not being met. Defendant Schott marked the grievance as resolved without an appeal, stating, "Mr. Sparks, it is my understanding that you seen the ortho this week. The appeal is closed." *Id.* Plaintiff has failed to articulate why he allegedly filed a grievance arguing that his medical needs were allegedly not being met if he had just seen an outside orthopedic doctor. Additionally, he fails to articulate what medical needs he felt were not being met by medical professionals at Ste. Genevieve County Jail. Furthermore, Plaintiff has not stated what injuries or illness he purportedly saw an outside orthopedic for.

On April 24, 2025, Plaintiff filed an MSR seeking to have his hand pain looked at. He also requested the use of a walker. Again, Plaintiff fails to indicate why he wanted a medical professional to look at his hand and why he sought the use of a walker. He fails to indicate what specific serious medical needs he believed were not being met by the medical professionals at Ste. Genevieve County Jail. "Medical 8700" marked the MSR as resolved without an appeal, stating, "Will follow up." *Id*. It is unclear if Plaintiff attended "sick call" to address his request with the medical professionals at that time.

On May 13, 2025, Plaintiff filed an MSR complaining of generalized back pain and requesting pain medicine. Plaintiff does not explain what injuries he was suffering from requiring pain medicine. Plaintiff also indicated that he had never heard back relating to his prior requests to medical. *Id*. Plaintiff has not expanded on what his "prior requests" to medical were or what he believes were not addressed by medical professionals at Ste. Genevieve County Jail. "Medical 8700" marked the request as resolved without an appeal, stating, "Will check." *Id*. It is once again unclear if Plaintiff attended "sick call" to address his request with the medical professionals at that time

On May 24, 2025, Plaintiff filed an MSR requesting a walker and complaining of pain. "Medical 8700" marked the request as resolved without an appeal, stating, "Will look into it." *Id.* at 14-15. Plaintiff has not elaborated as to what medical needs he was allegedly suffering from requiring the use of a walker. Plaintiff also fails to address whether he attended "sick call" to address his needs with medical professionals.

On May 26, 2025, Plaintiff filed an MSR seeking medical attention for hand pain, ringing in his ears, headaches, severe anxiety, and nightmares relating to the attacks on February 22, 2025.

*Id*. "Medical 8700" marked the request as resolved without an appeal, stating, "Will see on sick call." *Id*. at 15. Plaintiff fails to indicate if he attended "sick call" to address his needs.

On June 1, 2025, Plaintiff submitted a request to be placed on a kosher diet. He does not indicate who he submitted the request to; however, he asserts that Defendant Thomure forwarded the request to Defendant Goggins. *Id*. Plaintiff alleges that Defendant Goggins marked the request for kosher diet as resolved without an appeal, stating, "You stated your personal preference as Pentecostal when you entered this facility. You must have a history of sincerity of belief as one of Jewish faith to qualify for religious consideration for a kosher tray." *Id*.

On June 4, 2025, Plaintiff submitted a request for clarification of kosher diet. Again, Plaintiff fails to indicate who he submitted this request to; however, he asserts that Defendant Thomure submitted the request to Defendant Goggins. *Id*. Plaintiff alleges that Defendant Goggins marked the request as resolved without appeal, stating, "See response to other request regarding your diet request." *Id*. Plaintiff has not indicated how this second request differed from the first request.

On June 6, 2025, Plaintiff submitted a grievance for the denial of the request for kosher diet. Defendant Schmitt marked the grievance as resolved without an appeal, stating, "On 8/8/24 you arrived at this facility. You stated you were Pentecostal as your religion and was [sic] put on a diabetic tray. To be put on a Jewish Kosher diet tray, you must show sincerity of faith." *Id*. at 15-16.

On June 6, 2025, Plaintiff filed a grievance asserting that the Jail's copy policy was jeopardizing his criminal case. *Id.* at 16. Defendant Tubbs marked the grievance as resolved without an appeal with no other response. *Id*. Plaintiff fails to indicate how the copy policy jeopardized his criminal action.

On June 10, 2025, Plaintiff filed an MSR seeking a bottom bunk pass. "Medical 8700" marked the request as resolved without an appeal, stating, "Will forward to Melissa/8585." *Id*. Once again, Plaintiff fails to indicate what medical need he was suffering from that necessitated the need for a bottom bunk.

On June 12, 2025, Plaintiff filed an appeal of his grievance for a denial of a kosher diet. Defendant Schott marked the request as resolved without an appeal, stating, "Mr. Sparks, you will need to show sincerity of faith for us to change your diet. When you came in you listed your faith as Pentecostal. This appeal is closed. Major Schott. *Id*.

On June 12, 2025, Plaintiff filed a request to notify staff that he wanted to file charges against Antonio Braxton for the attack on February 22, 2025. Defendant Prest marked his request as resolved, stating, "We don't have a complaint form." *Id*.

On June 13, 2025, Plaintiff filed a request for the prosecution of Antonio Braxton. Defendant Thomure marked Plaintiff's request as "Forward to SSGT Goggins." *Id.*

In his "Request for Relief," Plaintiff seeks compensatory and punitive damages. He also seeks dismissal of his current pending federal charges.[3]

**Discussion**

Having thoroughly reviewed and liberally construed Plaintiff's Amended Complaint, the Court will sever and dismiss Plaintiff's infringement of his religious rights claims pursuant to Federal Rule of Civil Procedure 21. Plaintiff may file these claims in a new lawsuit if he chooses to do so. Additionally, the Court dismisses the Amended Complaint, without prejudice, pursuant to 28 U.S.C. § 1915(e)(2).

---

[3]This Court has no jurisdiction over Plaintiff's current criminal action in *United States v. Sparks*, No. 4:24-CR-00374 JAR (E.D.Mo.). To the extent Plaintiff wishes to assert claims in his criminal action, he must file those claims in that case.

## I. Defendant Ste. Genevieve County

The Court will first address Plaintiff's custom and policy claims against Ste. Genevieve County.

A governmental entity like the County can be sued directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Liability under § 1983 may attach if the constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). Thus, there are three (3) ways in which a plaintiff can prove municipal liability. First, "policy" refers to an "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence*, Mo., 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cnty.,* 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action … made from among various alternatives by the official or officials responsible … for establishing final policy with respect to the subject matter in question") (internal quotations omitted). Second, to establish a claim of liability based on "custom," a plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Third, to demonstrate deliberate indifference for purposes of failure to train, a plaintiff must show a "pattern of similar constitutional violations by untrained employees." *S.M. v Lincoln*

*Cnty.,* 874 F.3d 581, 585 (8th Cir. 2017). In addition, a municipality cannot be held liable under § 1983 on a theory of respondeat superior for actions of employee tortfeasor: "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691. However, actions of an employee who is a municipal decisionmaker can be "properly attributable to the municipality" where the plaintiff demonstrates that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (holding: § 1983 plaintiff may not establish municipal policy giving rise to liability merely by identifying policymaker's conduct that is properly attributable to municipality, but must also demonstrate that, through its deliberate conduct, municipality was "moving force" behind injury alleged).

Plaintiff's facts do not point to the existence of any "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [Ste. Genevieve County's] governing body" as being at issue in this case. *See Angarita v. St. Louis Cty*., 981 F.2d 1537, 1546 (8th Cir. 1992). He does not claim that a specific staff member's actions at Ste. Genevieve County were the result of "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *See Corwin v. City of Independence, Mo.,* 829 F.3d 695, 700 (8th Cir. 2016). Plaintiff also has not established the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by" the County's employees, much less that policymaking officials were deliberately indifferent to or tacitly authorized such misconduct. *See Johnson,* 725 F.3d at 828.

Plaintiff claims in a conclusory manner that the Jail has a practice of "resolving grievances without appeal and dismissing appeals…deliberate indifference concerning very serious medical

needs of detainees." [ECF No. 8 at 11]. However, he has not specifically articulated exactly what serious medical needs he was suffering from at the Jail. Plaintiff states only that he suffered from generalized pain in his head, neck, leg and back after an altercation with another inmate. Further, he alleges generally that he sought care through the grievance system even though he was repeatedly told to file medical service requests. Additionally, Plaintiff fails to acknowledge that he was told that he would be seen on sick call hours at the Jail, and if he could not wait until that time, he could file a medical service request to be seen earlier. Moreover, Plaintiff fails to identify if he was seen at sick call and provided some medical services during that time. Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Nor will a prisoner's "mere disagreement with treatment decisions" support a claim of deliberate indifference. *Jones v. Minn. Dep't of Corr.,* 512 F.3d 478, 482 (8th Cir. 2008).

Although Plaintiff asserts in a conclusory manner that Major Schott was deliberately indifferent in failing to train or supervise the employees at the Jail with regard to replying to grievances and medical service requests, he has failed to assert specific facts relative to his claims. That is, he has not shown that either Major Schott or Ste. Genevieve County "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.,* 397 F.3d 1118, 1122 (8th Cir. 2005).[4] For these reasons, Plaintiff has failed to state a claim against Major Schott in his official capacity or Ste. Genevieve County. *See Ulrich v. Pope Cty.,* 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal

[4] Additionally, to demonstrate deliberate indifference for purposes of a failure to train, a plaintiff must show a "pattern of similar constitutional violations by untrained employees." *S.M. v Lincoln Cnty*., 874 F.3d 581, 585 (8th Cir. 2017). Plaintiff has not indicated that there was a pattern of deliberate indifference relating to a generalized failure to provide medical treatment at the Jail. He was told on numerous occasions to fill out a medical service request or see a doctor or nurse on sick call rather than attempt to obtain medical services through filing grievances. And it appears that Plaintiff was seeing medical, as evidenced by an appointment with an orthopedic and medical personnel having provided him with some medication [Tylenol] for his pain.

of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

**II. Defendants Ste. Genevieve County Jail, Ste. Genevieve County Sheriff's Department and Ste. Genevieve County Jail Medical Staff**

The Court next addresses Plaintiff's claims against the Ste. Genevieve County Jail, Ste. Genevieve County Sheriff's Office and Ste. Genevieve County Jail Medical Staff. Plaintiff's claims against these entities, brought in their official capacities, are subject to dismissal, as these entities are not suable under 42 U.S.C. § 1983. *See Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (affirming dismissal of West Memphis Police Department and West Memphis Paramedic Services because they were "not juridical entities suable as such"). *See also Owens v. Scott Cty. Jail,* 328 F.3d 1026, 1027 (8th Cir. 2003) (stating that "county jails are not legal entities amenable to suit"); and *De La Garza v. Kandiyohi Cty. Jail*, 18 Fed. Appx. 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department as parties because they are not suable entities).

**III. Official Capacity Claims Against the Remaining Individual Defendants**

Plaintiff brings official capacity claims against individual Defendants Schott, Goggins Thomure, Tubbs, Ryan, Prest, Schmitt and Buchanan. As set forth above, local government entities can be subject to suit for constitutional violations under 42 U.S.C. § 1983. *See Monell,* 436 U.S. at 690 (1978). But *Monell* liability attaches only where the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick*, 883 F.3d at 1079 (8th Cir. 2018). Here, Plaintiff's allegations establish that the Defendants were employed by Ste. Genevieve County. But the Complaint contains no non-conclusory allegations of a policy or custom, and he also fails to allege an unconstitutional failure

to train. *See* FN 3. As such, the Court dismisses Plaintiff's official capacity claims without prejudice.

### IV. Individual Capacity Claims Against the Individual Defendants

#### A. Failure to Respond to Medical Service Requests and Grievances

Plaintiff next asserts that Defendants should be liable for failing to respond to his multiple grievance requests seeking medical care. But there is no federal constitutional right to a prison grievance procedure, and neither state law nor state policy creates one. Therefore, if a state elects to provide a grievance mechanism, violations thereof will not give rise to a § 1983 claim. *See Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir. 1993) (prison officials' failure to process grievances, without more, is not actionable under § 1983). "A grievance procedure does not confer any substantive constitutional right upon prison inmates." *Bostic v. Babich*, No. 1:07-CV-14-ERW, 2008 WL 906801 at *7 (E.D. Mo. Apr. 3, 2008) (internal quotation omitted). Therefore, "the denial of grievances, in and of itself, cannot support a substantive constitutional claim." *Walls v. Highsmith,* No. 4:07-CV-1897-DJS, 2007 WL 4468694 at *2 (E.D. Mo. Dec.17, 2007) (citing *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002)). Moreover, it is well established that there is no federal constitutional liberty interest in having prison officials follow prison regulations. *See Phillips v. Norris,* 320 F.3d 844, 847 (8th Cir. 2003) (citing *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996)).

At one point in the process, Plaintiff complains that he was denied a complaint form to file an additional grievance. He does not allege that this was done as retaliation for filing grievances, which might state a claim for retaliation. *See, e.g., Sprouse v. Babcock*, 870 F.2d 450, 452 (1989) ("That the Constitution does not obligate the state to establish a grievance procedure is, we believe, of no consequence here, since what is at stake is a prisoner's right of access to an existing grievance

procedure without fear of being subjected to a retaliatory disciplinary action.") Rather, Plaintiff alleges that he wanted to file charges against another inmate for the attack on February 22, 2025. Defendant Prest marked his request as resolved, stating, "We don't have a complaint form." The Eighth Circuit has recognized that "prisoners must understand that if they abuse the system by repeatedly filing ill-founded grievances, reasonable limitations may be placed on their access to the procedure." *Id.* (citing *In re Tyler* 839 F.2d 1290 (8th Cir. 1988) (per curiam) (affirming order of district court limiting petitioner to one filing per month)). It is reasonable for Ste. Genevieve County to have limited Plaintiff relative to his desire to filing complaints against other inmates. Corrections officials should be the final arbiter relative to disputes between inmates.

Because Plaintiff has no constitutional right to a prison grievance system, and because he has not alleged that Defendants acted in retaliation against him for filing grievances, his allegations that Defendants violated his right to file grievances cannot state a constitutional violation. The Court finds Plaintiff has not stated a plausible claim for denial of a constitutional right under 42 U.S.C. § 1983 and will dismiss this claim.

**B. Deliberate Indifference to Plaintiff's Serious Medical Needs and Delay in Treatment**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell,* 436 U.S. at 685. One such federally protected right is the Eighth Amendment's prohibition on cruel and unusual punishment, which protects prisoners from deliberate indifference to serious medical needs. *Luckert v. Dodge Cnty.,* 684 F.3d 808, 817 (8th Cir. 2012).

Plaintiff here is a pretrial detainee. In general, the Fourteenth Amendment's Due Process Clause is used to evaluate pretrial detainee's claims of deliberate indifference, whereas the Eighth Amendment is used to evaluate claims of convicted prisoners. *See Stearns v. Inmate Servs. Corp.,*

957 F.3d 902, 906 (8th Cir. 2020) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). However, this distinction "makes little difference as a practical matter," because the same standard is applied. *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007) ("Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment."); *see also Vaughn v. Greene County*, 438 F.3d 845, 850 (8th Cir. 2006) ("Although this court has yet to establish a clear standard [for medical mistreatment] for pretrial detainees, we repeatedly have applied the same 'deliberate indifference' standard as is applied to Eighth Amendment claims made by convicted inmates."); *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (applying the Eighth Amendment deliberate indifference analysis to a pretrial detainee's Fourteenth Amendment claim).

To prevail on a deliberate indifference claim, a plaintiff must demonstrate that he suffered from an objectively serious medical need, and that defendants actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (quoted case omitted).

"[D]eliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (quoted case omitted). An inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014) (quoted case omitted).

Deliberate indifference may also be demonstrated by prison officials who intentionally deny or delay access to medical care. *Estelle,* 429 U.S. at 104-05. When a delay in treatment is alleged to have violated an inmate's constitutional rights, a court measures the objective severity of the deprivation "by reference to the effect of the delay in treatment." *Jackson v. Riebold*, 815 F.3d 1114, 1119 (8th Cir. 2016) (internal quotation marks omitted) (quoting *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005)). To support a claim based on a delay in treatment, a plaintiff must present "verifying medical evidence" showing that the delay in treatment had detrimental effects. *Id.* at 1119-20; *see also Holden*, 663 F.3d at 342 ("[a] prisoner alleging a delay in treatment must present verifying medical evidence that . . . [the] delays adversely affected his prognosis.").

As noted above, Plaintiff is required to allege that he was suffering from an objectively serious medical need, and that Defendants knew of and disregarded that need. Plaintiff asserts a variety of ailments in this action, but unfortunately, his allegations are all generalized. For example, he asserts that he had chronic pain after an altercation with another inmate, causing head, neck, back, leg and hand pain. However, he fails to indicate what the exact nature of his injuries were, and he fails to articulate why he believed each injury was serious such that it required immediate medical care. A pro se complaint is liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, such pleadings cannot be conclusory, and must set forth facts that, taken as true, state a claim as a matter of law. *Johnson v. Stark*, 717 F.2d 1550, 1552 (8th Cir. 1983). A court will not supply additional facts or create a legal theory assuming facts that have not been pleaded. *Stone*, 364 F.3d at 914.

Plaintiff also discusses joint pain, headaches, having nightmares and his request for a bottom bunk and a walker. However, he fails to articulate a specific diagnosis or injury

necessitating the bunk request or walker. He has failed to properly allege that he suffered from a serious medical need necessitating a doctor's treatment. Thus, the Court is unable to find that Defendants acted with deliberate indifference with respect to his requests for medical care.

**C. Misjoinder of Religious Infringement Claims**

Plaintiff asserts that his First Amendment rights were infringed upon when his requests for a kosher meal plan were denied at Ste. Genevieve County Jail. He brings this claim despite the Court's warning in the November 19, 2025 Memorandum and Order indicating that Plaintiff's religious infringement claims were likely improperly joined.

Plaintiff's complaint violates Federal Rule of Civil Procedure 20 because it impermissibly joins together unrelated claims. While joinder of claims, parties, and remedies are encouraged under the Federal Rules of Civil Procedure, permissive joinder is not applicable in all cases. *Mosely v. General Motors Corp.,* 497 F.2d 1330, 1333 (8th Cir. 1974). Under Federal Rule 20(a)(2), a plaintiff may join multiple defendants in one action if he asserts a right to relief against them that arises from the "same transaction, occurrence, or series of transactions or occurrences" and the claims present "question of law or fact common to all defendants." Fed. R. Civ. P. 20(a)(2). Unrelated claims against different defendants belong in different suits. This rule is particularly relevant in prisoner litigation, as it helps ensure compliance with the Prison Litigation Reform Act, which limits the number of frivolous suits or appeals a prisoner may file in forma pauperis. *See* 28 U.S.C. § 1915(g).

Plaintiff's claims of religious infringement and his claims of deliberate indifference to his medical needs belong in separate suits. The questions of law and fact related to his religious infringement claims are separate from those related to his deliberate indifference to his medical needs claims. For example, Plaintiff's religious infringement claims will involve discovery

concerning the issue of what his religious preference was at the time he was incarcerated at the Ste. Genevieve Correctional Center. Whereas his medical claims relate to what his serious medical needs were in February of 2025 (and several months thereafter), as well as what treatment he received for those issues, and whom he sought care from for his needs.

The Court may, on its own, drop parties or sever any claims against a party to remedy this misjoinder. *See* Fed. R. Civ. P. 21. The Court will therefore sever and dismiss, without prejudice, Plaintiff's claims relating to his alleged infringement of his religious rights under RLUIPA and/or the First Amendment.

**D. Denial of Right of Access to the Courts**

The Court last addresses Plaintiff's assertions that the Court denied him the right of access to the Courts under the First Amendment.

The United States Supreme Court has stated that it is "established beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). This right requires that prisons provide "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Typically, access to courts claims result from deficiencies in a prison's legal assistance program or law library that hinders an inmate's ability to bring a claim. *Williams v. Hobbs*, 658 F.3d 842, 852 (8th Cir. 2011). In this case, Plaintiff asserts that the Ste. Genevieve County's copy program inhibited his right of access to Court's.

However, "the due process clause is not meant to enable the prisoner to discover grievances, and to litigate effectively once in court." *Id*. "To prove a violation of the right of meaningful access to the courts, a prisoner must establish [that] the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in

a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008). To prove actual injury, the plaintiff must demonstrate that a nonfrivolous legal claim has been frustrated or is being impeded. *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007). For example, an inmate must show that a complaint that he prepared was dismissed due to a technical requirement that a law library's inadequacies prevented him from knowing, or that a library was so inadequate that it prevented him from filing a complaint for actionable harm at all. *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996).

"There is no one method of satisfying the constitutional requirement, and a prison system may experiment with prison libraries, jailhouse lawyers, private lawyers on contract with the prison, or some combination of these and other devices." *Bear v. Fayram*, 650 F.3d 1120, 1123 (8th Cir. 2011). A prison system does not run afoul of the constitution if there is no actual harm to an inmate's access rights. *Bear v. Kautzky*, 305 F.3d 802, 806 (8th Cir. 2002). *See also Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (stating that for an inmate to assert a successful claim of denial of meaningful access to the courts, he must demonstrate that he has suffered prejudice).

Plaintiff has failed to allege that he suffered prejudice with an ongoing legal claim. As such, he is unable to establish a First Amendment right of access to courts claim.

**Conclusion**

In conclusion, and in light of the aforementioned, after severing Plaintiff's religious infringement claims, the Court dismisses Plaintiff's Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's claims for religious infringement are **SEVERED and DISMISSED without prejudice due to MISJOINDER**. *See* Fed.R.Civ.P. 21.

**IT IS FURTHER ORDERED** that that this action is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that an appeal of this Order would not be taken in good faith.

Dated this 1st day of October, 2026.

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE